Argued and submitted May 13, 1988, remanded with instructions; otherwise affirmed
May 10, reconsideration denied September 1, petition for review denied
October 26, 1989 (308 Or 466)

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL O'BRIEN,
*Appellant.*

(86-08-30710; CA A42827)

774 P2d 1109

Marc D. Blackman, Portland, argued the cause for appellant. With him on the brief was Ransom, Blackman & Simson, Portland.

Jonathan Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

**DEITS, J.**

Defendant appeals from convictions for theft of services in the first degree, ORS 164.125, and conspiracy to commit theft of services in the first degree. ORS 161.450; ORS 164.125. He argues that the trial court erred in denying his motion to suppress financial records, in its admission of evidence of prior bad acts under OEC 403 and OEC 404 and in its admission of a co-conspirator's statements under OEC 801(4)(b)(E). He also contends that the trial court erred in failing to merge the convictions for theft of services and conspiracy to commit theft of services and in ordering defendant to pay restitution.

Defendant was president of O'Brien International, Ltd. (O'Brien Int'l), a closely held corporation, which contracted with the United States Forest Service to provide helicopter-based fire suppression services in the Umatilla National Forest. O'Brien Int'l subcontracted with Rambling Rotors (Rambling) for helicopter services. Knight, president of Rambling, testified that he negotiated the contract with Tania O'Brien, defendant's wife, who is an officer of O'Brien Int'l. The contract was ratified by the O'Briens as the sole shareholders. When O'Brien Int'l failed to pay Rambling under the contract, Tania told Knight that O'Brien Int'l had not yet been paid by the Forest Service. She later advised him that he was not being paid because O'Brien Int'l was having financial trouble. Rambling sued O'Brien Int'l, obtained a judgment and collected part of the money due under the contract.[1]

In connection with a criminal investigation, the state twice subpenaed O'Brien Int'l's bank records for use by the grand jury under ORS 192.565(6).[2] The records showed that

---

[1] The parties projected that a total of $82,000 would be paid by the Forest Service, of which Rambling Rotors was to be paid $78,000. Rambling collected approximately $32,000 in the civil proceeding.

[2] ORS 192.565(6) states:

"Pursuant to the issuance of a summons or subpena, a state or local agency may petition the court, and the court, upon a showing of reasonable cause to believe that a law subject to the jurisdiction of the petitioning agency has been or is about to be violated, may order that service upon the customer pursuant to subsection (2) of this section, information concerning such service required by subsection (4) of this section, and the 10-day period provided for in subsection (5) of this section be waived or shortened."

several Forest Service checks had been deposited in the O'Brien Int'l account at the time when Tania was telling Knight that it had not yet been paid by the Forest Service. Defendant assigns error to the trial court's denial of his motion to suppress those records. The state concedes that, under *State v. McKee,* 89 Or App 94, 98, 747 P2d 395 (1987), the affidavit supporting the grand jury subpenas was insufficient. However, the state argues that the error was harmless because, before trial, the state properly resubpenaed the records and that subpena was not challenged by defendant.[3]

■■■ Defendant argues that it was not harmless error, because the documents were used by the grand jury and by the prosecution in trial preparation. However, the grounds for setting aside an indictment are listed in ORS 135.510 and are the exclusive grounds. *State v. Stout,* 305 Or 34, 749 P2d 1174 (1988). The use of documents obtained pursuant to an invalid subpena is not listed in ORS 135.510 and, therefore, it is not a basis on which the indictment may be set aside. Further, the prosecutor's use of the records to prepare for trial did not impermissibly prejudice defendant because, even though the prosecutor's initial access to the records was technically improper, the same records were eventually obtained through a proper process.

Defendant next argues that the trial court erred in overruling his motion to quash the subpena for personal bank records. He argues that the subpena did not comply with ORS 192.565 in three ways: It did not identify the statutory authority under which the records were being obtained; it identified the grand jury as the issuing agency rather than the district attorney's office; and the state did not personally serve defendant, but instead served his attorney.

■■ Defendant's first assertion is incorrect. The subpena cited ORS 192.565 as statutory authority. However, the subpena identified the grand jury, rather than the district attorney, as the issuing agency, and defendant's attorney was served rather than defendant. Nonetheless, the summons need only be quashed if the irregularities resulted in prejudice

___

[3] At the pretrial hearing, the district attorney told the court and defense counsel that he intended to resubpena the records for trial. The court invited defense counsel to move against the forthcoming trial subpena. Defendant did not do so.

to defendant with respect to a substantial right. ORS 131.035; *see Vaughan v. Taylor,* 79 Or App 359, 718 P2d 1387, *rev den* 301 Or 445 (1986). We conclude that the defects in the subpena did not prejudice a substantial right of defendant. He did not assert any prejudice at trial, despite the trial court's specific inquiry of defense counsel as to what, if any, prejudice resulted from the service being on counsel rather than on defendant. On appeal, also, defendant does not identify any prejudice. Technical defects in the issuance and service of a subpena for bank records that do not result in prejudice to a defendant do not require that the subpena be quashed.

■ Defendant also assigns as error the trial court's admission of "other bad acts" evidence. Five helicopter operators testified that defendant or his wife contracted for helicopter services for which they failed to pay. The state contended that the conduct in these transactions was sufficiently similar to the present case to show that defendant's intent was to defraud. In addition, the state contends that the other transactions demonstrate a common plan or scheme by defendant. Defendant argues that the state failed to satisfy the requirements of *State v. Johns,* 301 Or 535, 725 P2d 312 (1986), for the admission of evidence of "other bad acts." Specifically, defendant argues that the state did not sufficiently establish that the other bad acts were committed and that defendant was the actor.

We conclude that there was sufficient evidence for the trial court to conclude that those other incidents did occur and that defendant was involved. The operators testified that they had contracted with defendant or his wife and that they had not been paid. Several of the operators had obtained personal judgments against defendant. They also testified to the particular methods used by defendant and his wife to put them off; for example, saying that the Forest Service had not yet paid. Defendant testified that he had not paid those operators because of contract disputes. He argues that his testimony establishes that those transactions did not involve "bad acts." However, the fact that defendant gave contradictory testimony as to his intent in the other transactions did not require the court to find that the threshold was not met under *Johns.* There was evidence that defendant had committed similar acts. That evidence, if believed by the jury, was directly relevant to defendant's state of mind, his intent and the absence

of mistake. The court did not abuse its discretion in admitting the evidence. *See State v. Powell,* 82 Or App 13, 16-17, 727 P2d 136 (1986), *rev den* 302 Or 571 (1987).

Defendant next argues that the trial court improperly restricted the scope of cross-examination concerning payment disputes with the other helicopter operators. Defendant only assigns error arising from the cross-examination of one operator, Guest, and makes no separate claims with respect to the other operators. The state objected to defendant's cross-examination of Guest, arguing that the questions were repetitive and not relevant, and the court sustained the objection. Defendant argues that the trial court erroneously restricted his opportunity to establish facts from which the witness' bias or interest could have been inferred. However, defendant failed to make an offer of proof and, thus, we are unable to determine whether defendant's argument has merit. *State v. Affeld,* 307 Or 125, 764 P2d 220 (1988).

Defendant also contends that the trial court erred in admitting evidence of statements made by his wife as statements of a co-conspirator.[4] He argues that the state made an insufficient showing under OEC 801(4)(b)(E) of the existence of a conspiracy. OEC 801(4)(b)(E) provides:

"(4)   A statement is not hearsay if:

"* * * * *

"(b)   The statement is offered against a party and is:

"* * * * *

"(E)   A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

Defendant and the state agree that the rule is derived from FRE 801(d)(2)(E) and that, therefore, the necessary preliminary question of whether a conspiracy exists should be determined under the federal "preponderance of the evidence" standard. *Bourjaily v. United States,* 483 US 171, 107 S Ct 2775, 97 L Ed 2d 144 (1987). However, defendant argues that the adoption of OEC 801(4)(b)(E) did not alter what he asserts is the "Oregon requirement that the existence of a

---

[4] Defendant also argues that the court applied the test in OEC 801(4)(b)(D) as if his wife's statements were being offered as a corporate agent against the corporation, rather than as a co-conspirator.

conspiracy must be established by evidence *independent of the statement itself.*" (Emphasis defendant's.) We disagree.

■ Under FRE 104(a) and FRE 801(d)(2)(E), which OEC 104(a) and OEC 801(4)(b)(E) parallel, statements of a co-conspirator may be considered, together with other independent evidence, in determining if a conspiracy exists. *Bourjaily v. United States, supra,* 483 US at 181. 107 S Ct at 2779, 97 L Ed 2d at 156. In *State v. Pottle,* 62 Or App 545, 662 P2d 351, *aff'd* 296 Or 274, 677 P2d 1 (1984), we discussed the standard for showing a conspiracy. The trial court had held an omnibus hearing on the admission of the co-conspirators' statements, in which the statements themselves, in addition to evidence that was independent of the statements, were considered by the court in deciding whether a conspiracy had been established. "[I]n many cases, conspiracy can be shown only by circumstantial evidence consisting of the declarations, acts and conduct of the conspirators." 62 Or App at 550-551, *citing State v. Brom,* 8 Or App 598, 604, 494 P2d 434, *rev den* (1972). We hold that the trial court properly considered the co-conspirator's statements in addition to independent evidence of a conspiracy.

■ Defendant also argues that the corporation, rather than he as an individual, was involved in the Rambling transaction and, thus, that he was not involved in a conspiracy. We disagree. There was evidence that he was involved in the transaction. He came to the helicopter base and signed the flight invoices. In addition, he and his wife ratified the acts of the corporation as its shareholders. Under ORS 161.175, he may be criminally liable for conduct constituting an offense that he performed in the name of or on behalf of a corporation. *State v. Baker,* 48 Or App 999, 1003, 618 P2d 997 (1980).

Defendant also assigns error to the trial court's order requiring him to pay restitution for attorney fees and investigation expenses incurred by Rambling in pursuing its civil claims against him. ORS 137.106(1) provides that a court may order a defendant to make restitution to the victim when the person is convicted of criminal activities that have resulted in pecuniary damages. ORS 137.103(2) defines pecuniary damages:

"[A]ll special damages, but not general damages, which a person could recover against the defendant in a civil action

arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling."

■ ■ The crucial question in deciding whether attorney fees may be recovered as restitution is whether they are "special damages" as the term is used in ORS 137.103(2). Attorney fees are not considered damages when sought in the same action in which the services are rendered. However, they may be damages when sought in a separate action. *Samuel v. Frohnmayer*, 95 Or App 561, 770 P2d 914 (1989); *Sizemore v. Swift*, 79 Or App 352, 358, 719 P2d 500 (1986). Here, the victim could have recovered attorney fees in a breach of contract action. However, if recovered in that action, they would not have been considered damages. Therefore, under ORS 137.103(2), attorney fees are not "special damages" recoverable in a civil action arising out of defendant's criminal conduct and, accordingly, are not recoverable as part of restitution.

■ Defendant also asserts that the court erred in including as restitution $780 in fees charged by the state's expert witness. The state argues that this amount was properly included, because it was recoverable under ORS 161.665 as a cost incurred by the state in prosecuting defendant. However, Knight apparently paid the fee. Thus, technically, it is not recoverable under ORS 161.665, because the expense was not incurred by the state. Accordingly, the expert witness fee must be deleted from the restitution owed by defendant.

■ Finally, defendant asserts, and the state agrees, that the trial court erred in "merging" defendant's convictions for theft of services and conspiracy to commit theft of services "for sentencing only," because only one conviction should have been entered. ORS 161.485(3); *State v. McNamer*, 80 Or App 418, 421, 722 P2d 51 (1986). We agree.

Remanded with instructions to vacate conviction for conspiracy to commit theft of services and to modify restitution ordered to exclude expert witness fees and attorney fees; otherwise affirmed.